# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**SADIQUE M. JAFFER,**

       **Plaintiff,**

**v.**                                       **Case No:  6:12-cv-1669-Orl-31GJK**

**DEPARTMENT OF HOMELAND
SECURITY and SECRETARY,
DEPARTMENT OF HOMELAND
SECURITY,**

       **Defendants.**

_____

# ORDER

This cause comes before the Court on a Motion to Dismiss (Doc. 14) filed by Defendant, Secretary of the United States Department of Homeland Security ("DHS"); and a Response (Doc. 22) filed by Plaintiff Sadique M. Jaffer ("Jaffer").

## I.    Background

Plaintiff filed this Fourth Amendment unreasonable search and seizure case on November 7, 2012 asserting what appears to be a single Count stemming from Plaintiff's repeated detentions by the Department of Homeland Security. Jaffer is a naturalized United States citizen and a practicing Muslim. According to the Complaint he frequently used his influence in his local Muslim community to advocate against those who would "use their faith as a political force." This position, however, put him at odds with other members of his community. The resulting dispute caught the attention of the Federal Bureau of Investigation ("FBI"). Although Plaintiff agreed to cooperate with the FBI and to report any potential threat, he was placed on the Federal watch list.

Jaffer travels frequently for business, pleasure, and religious pilgrimages. On August 13, 2007, Plaintiff arrived at Bush International Airport in Houston, Texas on a flight from Costa Rica. Upon arrival, Plaintiff was escorted from the plane and detained for four hours. During this time he claims that he was denied food, water, and the use of bathroom facilities, and that he was verbally abused "[i]f he so much as turned his head." Since that time, Plaintiff has been subject to delays and/or detained more than fifty times when re-entering the United States.

DHS implemented a redress program to resolve traveler complaints in February, 2007 pursuant to 49 U.S.C § 44926, called the Traveler Redress Inquiry Program ("DHS TRIP"). Travelers who believe they have experienced discrimination or are repeatedly referred to secondary screening can submit an inquiry form with supporting documentation for review by the agency. Once received, DHS investigates the alleged difficulty, such as whether the traveler is on a government terrorist watch list or has a history of criminal or immigration problems.

Pursuant to this program, Plaintiff submitted several inquiry forms in an effort to determine the source of his travel issues. On one occasion this led to a meeting with an FBI agent who informed Plaintiff that he had been placed on the watch list. The agent assured Jaffer that he would "initiate the process to stop the detentions." Several months passed without resolution, so Plaintiff filed suit in this Court on April 3, 2009. Three months later, however, the detentions ceased, so he voluntarily dismissed the suit without prejudice. On June 4, 2012, the secondary screenings and detentions resumed. Between June 4 and November 1, 2012, Plaintiff was subjected to secondary screening and detention thirty-five times. *See* Doc. 1-1 at 48-50. He filed another inquiry form through DHS TRIP, and on September 10, 2012, he received a letter in response stating,

> . . . we can neither confirm nor deny any information about you which may be within federal watchlists or reveal any law enforcement sensitive information.

> However, we have made any corrections to records that our inquiries determined were necessary, including, as appropriate, notations that may assist in avoiding incidents of misidentification.
>
> . . .
>
> This letter constitutes our final agency decision, which is reviewable by the United States Court of Appeals under 49 U.S.C. § 46110.

(Doc. 1-1 at 46).

According to the Complaint, Plaintiff seeks to challenge "the government's implementation of 49 U.S.C. § 44903 . . . as implemented by the DHS at 49 C.F.R. parts 1540, 1544, 1560. . . . Specifically, Plaintiff challenges the government's application of these actions . . . as violating the protections guaranteed to Plaintiff by the Fourth Amendment . . . ." (Doc. 1, ¶¶ 1-2). The "Causes of Action" section repeats the Fourth Amendment claim and further alleges that DHS "has failed to provide a timely or adequate remedy for the Plaintiff." (Doc. 1, ¶ 70-71). DHS now moves to dismiss the Complaint under Fed. R. Civ. P. 12(b)(6).

## II.     Standard

In ruling on a motion to dismiss, the Court must view the complaint in the light most favorable to the Plaintiff, *see, e.g.*, *Jackson v. Okaloosa County, Fla.*, 21 F.3d 1531, 1534 (11th Cir. 1994), and must limit its consideration to the pleadings and any exhibits attached thereto. Fed. R. Civ. P. 10(c); *see also GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993). The Court will liberally construe the complaint's allegations in the Plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411,421 (1969). However, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

In reviewing a complaint on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "courts must be mindful that the Federal Rules require only that the complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.' " *U.S. v.*

*Baxter Intern., Inc.*, 345 F.3d 866, 880 (11th Cir. 2003) (citing Fed. R. Civ. P. 8(a)). This is a liberal pleading requirement, one that does not require a plaintiff to plead with particularity every element of a cause of action. *Roe v. Aware Woman Ctr.for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001). However, a plaintiff's obligation to provide the grounds for his or her entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-555 (2007). The complaint's factual allegations "must be enough to raise a right to relief above the speculative level," *Id.* at 555, and cross "the line from conceivable to plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1950-1951 (2009).

### III.    Analysis

In response to the motion to dismiss, Plaintiff claims that he seeks to challenge "only the fact that he is continually detained in violation of his Four (sic) Amendment rights." (Doc. 22 at n.1). Such a challenge is not supported by case law. Routine border searches are reasonable simply by virtue of the fact that they occur at the border. *United States v. Flores-Montano*, 541 U.S. 149, 152-53, 124 S. Ct. 1582, 1585, 158 L. Ed. 2d 311 (2004) (quoting *United States v. Ramsey,* 431 U.S. 606, 616, 97 S.Ct. 1972, 52 L.Ed.2d 617 (1977). *See also*, *United States v. Montoya de Hernandez,* 473 U.S. 531, 538, 105 S.Ct. 3304, 87 L.Ed.2d 381 (1985) ("Routine searches of the persons and effects of entrants are not subject to any requirement of reasonable suspicion, probable cause, or warrant"). Secondary detentions of the length experienced by the Plaintiff are also frequently found to be reasonable. *See Illinois v. Caballes,* 543 U.S. 405, 407, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005) (stating that a seizure can become unlawful if it is "prolonged beyond the time reasonably required to complete [its] mission"); *United States v. Aukai,* 497 F.3d 955, 963

(9th Cir. 2007). Finally, Plaintiff cites no authority for the proposition that otherwise reasonable detentions can be unreasonable in the aggregate.

To the extent Plaintiff challenges DHS's failure to provide relief, this Court is without jurisdiction. Such a claim must be brought in the appropriate court of appeals.[1] 49 U.S.C. § 46110(a) (". . . a person disclosing a substantial interest in an order issued by [DHS]. . . may apply for review of the order by filing a petition for review in the . . . court of appeals of the United States for the circuit in which the person resides."). *See Corbett v. United States*, 458 F. App'x 866, 870 (11th Cir. 2012) *cert. denied,* 133 S. Ct. 161, 184 L. Ed. 2d 33 (2012); *Green v. Brantley*, 981 F.2d 514, 521 n. 2 (11th Cir. 1993).[2]

It is therefore,

**ORDERED** that the Motion to Dismiss is **GRANTED**, the Complaint is **DISMISSED.**

**DONE** and **ORDERED** in Orlando, Florida on May 1, 2013.

_____
GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

---

[1] Plaintiff cites 28 U.S.C. § 1631, which provides that this action could be transferred to the Court of Appeals. To the extent he seeks such a transfer, he must file an appropriate motion.

[2] Plaintiff argues in response that 49 U.S.C. § 46110(a) does not control because the letter he received from DHS TRIP is not an "order" under the statute. "Order" has generally been given expansive construction. *Green v. Brantley*, 981 F.2d 514, 519 (11th Cir. 1993) (citing *Atorie Air, Inc. v. FAA*, 942 F.2d 954, 960 (5th Cir. 1991)). There are, however, at least two requirements, (1) the order must be final, and (2) the agency record must be adequate enough to support judicial review. *Id.* (citations omitted). "An order is final when it imposes an obligation, denies a right or fixes some legal relationship as a consummation of the administrative process." *Corbett v. United States*, 458 F. App'x 866, 869 (11th Cir. 2012) *cert. denied,* 133 S. Ct. 161, 184 L. Ed. 2d 33 (U.S. 2012) (internal quotations and citations omitted). On its face, the order at issue here is final, and although no agency record was attached, one presumably exists. *See Id.* ("even if the record was insufficient, we could remand the case to the TSA to take additional evidence and counterevidence. *See* 28 U.S.C. § 2347(c)."). Under Section 46110(a), the Court lacks jurisdiction to inquire further.

Copies furnished to:

Counsel of Record
Unrepresented Parties